RECEIVED
OCT 10 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Michael Robert Marsoun ) | |
| ) | CASE NO. 07-0355 (JDB) |
| vs, ) | |
| ) | RESPONSE TO MOTION TO DISMISS |
| UNITED STATES ) | |
| ) | |
| ) | |
| ) | |

Defendant asserts that this 7431 action should be a 7433 action, and that the Court lacks jurisdiction, and, alternatively, that the action should be dismissed for failure to state a claim because Plaintiff has not alleged exhaustion of remedies under 7433. Addressing these assertions in their given order:

Defendant, by and with the assistance of counsel, is trying to use IRC § 7433 as though it repeals § 7431. Both demonstrate knowledge, p. 5, that such is not the case:

> "Section 7431 was added to the Internal Revenue Code six years before section 7433, and Congress must necessarily have been aware of section 7431 when it enacted section 7433. *Cf. Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation.").

The purpose of the Federal Tax Lien Act of 1966, 26 U.S.C. §§ 6321, 6323, was to fit tax liens into the priority scheme of the Uniform Commercial Code. *Pine Builders, Inc. v United States* (1976, ED Va) 413 F Supp 77, 76-1 USTC 9402, 19 UCCRS 306, 37 AFTR 2d 76-1361. Defendant and counsel admit, p. 12, that the purpose of the disclosure was <u>other than collection</u>:

"Had the information not have been disclosed, creditors of the Plaintiff would have no way to discover the existence of the liens... Indeed, the purpose of recording the lien...is to place the public on notice of the lien." William E. Schrambling Accountancy Corp. v. United States, 397 F.2d 1485, 1489 (9th Cir. 1991)."

It is well settled in the courts - and counsel has herself asserted - that §§ 7431 and 7433 do not address the legitimacy of the collection process, and that whether a disclosure is authorized under § 6103 is in no way dependent upon the validity of the underlying summons, lien or levy. The plain language of the internal Revenue Code supports the contention that the validity of the underlying collection activity is irrelevant in determining whether a disclosure is wrongful. The propriety of the underlying collection action is irrelevant to whether disclosure is authorized under section 6103. Section 7431 does not apply to disputed merits of an assessment; it only addresses civil damages for disclosure violations of § 6103.

While defendant and counsel attempt to use excerpts from *William E. Schrambling Accountancy Corp. v. United States*, 937 F.2d 1485, 1490 (9th Cir. 1991) among a litany of other cases, as support, the Court should note that these excerpts, if taken as presented, purport to authorize disclosing confidential information in the public domain, so that the disclosure of the confidential information in the public domain may then be excused because the confidential information is, post disclosure, in the public domain; the absurdity of this circuitous reasoning should result in the Court finding the out-of-Circuit excerpts unpersuasive.

Alternatively, defendant's assertions that the filing of a Notice of Federal Tax Lien is "in connection with" collection of tax, and is therefore to be addressed under

section 7433 rather than section 7431, defendant's arguments still fail.

As established in *Turner v. United States*, 429 F.Supp.2d 149 (D.D.C. 2006), in *Lindsey v. United States*, 448 F.Supp.2d 37 (D.D.C. 2006), and their progeny, the Court's *subject matter* jurisdiction under section 7433 was verified by the Supreme Court decision in *Arbaugh v. Y & H Corp.*, 126 S.Ct. 1235 (2006)[1], decided February 22, 2006, in which the Supreme Court examined "essential element of a claim" with respect to factual matters. *Arbaugh*, at 1240. Citing to *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U. S. 133, the *Arbaugh* Court reiterated:

> "If satisfaction of an essential element of a claim is at issue, however, the jury is the proper trier of contested facts."

Plaintiff asserts that the Complaints in each case met the "notice pleading" requirements set forth in Fed.R.Civ.P. 8(a), and *Conley v. Gibson*, 355 U.S. 41.[2]

Plaintiff's contention is supported by *Jones v Bock* (Nos. 05-7058 and 05-7142) __ U.S. ____, (Argued: October 30, 2006 -- Decided: January 22, 2007), in which the Honorable Roberts, C.J., opined that:

> "Failure to exhaust is better viewed as an affirmative defense. Federal Rule of Civil Procedure 8(a) requires simply a 'short and plain statement of the claim' in a complaint..."

and that,

---

[1] *Arbaugh*'s effect on "failure to state a claim" is addressed below, and discussed more fully in Plaintiff's RELIEF MEMO, ¶ ____.

[2] "(b) Failure of the complaint to set forth specific facts to support its general allegations of discrimination was not a sufficient [355 U.S. 42] ground for dismissal of the suit, since the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." Pp. 47-48.

> "The fact that the [statute at issue]...is silent on the issue whether exhaustion must be pleaded or is an affirmative defense, is strong evidence that the usual practice should be followed, and the practice under the Federal Rules is to regard exhaustion as an affirmative defense..."

Chief Justice Roberts also reiterated:

> "Courts should generally not depart from the Federal Rules' usual practice based on perceived policy concerns. See, e.g., Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U. S. 163,"[3]

and,

> "Given that the [statute at issue] does not itself require plaintiffs to plead exhaustion, such a result 'must be obtained by amending the Federal Rules, and not by judicial interpretation.' Leatherman, supra, at 168. Pp. 10-16."

7433(d)'s language - "unless the court determines" - in the common English to which *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984) referred, Id., 861, calls for a determination of fact; clearly within the province of the jury. *Arbaugh*, 1240; *Reeves*. Thus, motion to dismiss on grounds of "failure to state a claim" can be, and, based upon the Congressional language, <u>is</u>, more properly brought <u>after</u> the Court (see footnote 7) has had the opportunity to make a factual determination with respect to exhaustion of <u>available</u> administrative remedies, and even the *availability* of such remedies.

Defendant's Motion to Dismiss, insofar as it asserts "lack of subject matter jurisdiction" and "failure to state a claim", on the basis that

> "A judgment for damages shall not be awarded under [section 7433] subsection (b) unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service"

---

[3] Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U. S. 163 Held: A federal court may not apply a "heightened pleading standard" -- more stringent than the usual pleading requirements of Federal Rule of Civil Procedure 8(a).

lacks merit. The Court will note that defendant's counsel in Plaintiff's related case filed under section 7433 has eschewed such "failure to exhaust" (and "failure to plead") defense in his motion to dismiss Plaintiff's related 7433 case (Motion to Dismiss by Charles Keen, attached, with Plaintiff's response thereto, also attached, and filed concurrently in the related case), apparently aware that doing so would <u>misrepresent</u> the regulation (cited in Nicole M. Stoduto's' motion to dismiss the instant case) as a substantive rule--or a "legislative-type rule," i.e., one "affecting individual rights and obligations", when the standards established by the United States Supreme Court clearly establish otherwise; a misrepresentation Stoduto has now made.

## DISCUSSION

The regulation cited by counsel as a procedural bar[4] lacks - and has lacked from its purported promulgation - the "certain substantive characteristics" and "certain procedural requisites" required, <u>Chrysler v. Brown</u>, 441 U.S. 281, at 301, of "a substantive rule--or a 'legislative-type rule,'" <u>Id.</u>, 302; citing <u>Morton v. Ruiz</u>, 415 U.S. 199, at 236. Office of the Federal Register documents (including the "regulations" itself, and Treasury Directives) establish that neither the Secretary of the Treasury nor any authorized delegate promulgated <u>any</u> *substantive regulation* (see footnote 3, below), i.e., a regulation "affecting individual rights and obligations" <u>Morton v. Ruiz</u>, 415 U.S. 199, at 232, which made <u>any</u> *substantive* "administrative remedies available" (<u>IRC § 7433</u>) under any incarnation of Internal Revenue Code section 7433.

As the Honorable Rehnquist, J., opined in <u>Chrysler v. Brown</u>, 441 U.S. at 301,

---

[4] To the 7433 action Stoduto would have the Court convert the instant case into.

302,

> "In order for a regulation to have the "force and effect of law," it must have certain substantive characteristics and be the product of certain procedural requisites. The central distinction among agency regulations ... is that between "substantive rules" on the one hand and "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice" on the other. *** But in Morton v. Ruiz, 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974), we **1718 noted a characteristic inherent in the concept of a "substantive rule." We described a substantive rule--or a "legislative-type rule," id., at 236, 94 S.Ct., at 1074-as one "affecting individual rights and obligations." Id., at 232, 94 S.Ct., at 1073. This characteristic is an important touchstone for distinguishing those rules that maybe "binding" or have the "force of law." Id., at 235, 236,94 S.Ct., at 1074."[5]

The "certain procedural requisites" to which the Chrysler Court referred include, in respect of Stoduto' cited regulation, the procedural requirements of TREASURY DIRECTIVE: 28-01, and TREASURY DIRECTIVE: 25-03, discussed hereinthroughout, as appropriate.

The <u>Chrysler</u> Court continued, at 303:

> "Likewise, the promulgation of these ["substantive"] regulations must conform with any procedural requirements imposed by Congress. Morton v. Ruiz, supra, at 232. *For agency discretion is limited not only by substantive, statutory grants of authority, but also by the procedural requirements which "assure fairness and mature consideration of rules of general application."* NLRB v. Wyman-Gordon Co., 394 U.S. 759, 764 (1969)." (Block quote and emphasis added)

TREASURY DIRECTIVE: 28-01, by express terms, "establishes procedures that govern the issuance of regulations" Ibid., ¶ 1, and mandates that "issuance of

---

[5] Within the above analysis, footnote 31 included the commentary:
> "In contrast [the Attorney General's Manual] suggests that "interpretive rules" and "general statements of policy" do not have the force and effect of law. Interpretive rules are issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." Ibid. General statements of policy are "statements issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power."

regulations, the review of existing regulations, and the publication of regulatory agendas and programs are governed by the Administrative Procedure Act," among other Acts.Ibid., ¶ 2. TREASURY DIRECTIVE: 28-01 even establishes "Special Procedures for the Internal Revenue Service", at Part I, ¶ 4(b).

TREASURY DIRECTIVE 25-03 "states the responsibilities and procedures for submitting Department of the Treasury documents to the Office of the Federal Register in accordance with Title 1 of the Code of Federal Regulations (CFR) Chapter 1." Ibid. ¶ 1, and establishes conclusively that regulations submitted to the Office of the Federal Register for publication must comply with Title 1 of the Code of Federal Regulations.

TREASURY DIRECTIVE 25-03 also reaffirms that every document submitted must comply with TREASURY DIRECTIVE 28-01. TREASURY DIRECTIVE 25-03, ¶ 4(a)(2).

"[T.D. 8392, 57 FR 3536, Jan. 30, 1992; 57 FR 5931, Feb. 18, 1992, as amended by T.D. 9050, 68 FR 14320, Mar. 25, 2003]"[6] failed to comply with the procedural requirements of TREASURY DIRECTIVE 28-01 and TREASURY DIRECTIVE 25-03, to wit:.

Each of the Treasury Decisions purported to have promulgated Stoduto' cited regulation lacks the "complete citation of the authority under which the section is issued" required by Title 1 C.F.R. § 21.40, "including-(a) General or specific authority delegated by statute; and (b) Executive delegations, if any, necessary to link the statutory authority to the issuing agency". The information required by Title 1 C.F.R. §

---

[6]This series of Treasury Decisions purporting to "promulgate" and "amend" 26 CFR 301.7433 is quoted directly from, Treasury Decision 9050, 68 FR 14320 including the brackets.

21.40 is among the Agency Responsibilities published in Title 1 C.F.R. § 21.41.

Each of the Treasury Decisions purported to have promulgated the published "26 CFR 301.7433-1" contains neither a citation to 102 Stat. 3747 (TBOR I), nor to 110 Stat. 1465 (TBOR II), nor to 112 Stat. 730 (TBOR III), *aka* IRC § 7433, in its three (3) incarnations, as the source of authority, as required by the Office of the Federal Register in its administration of the Federal Register Act, at Title 1 C.F.R. § 21.43(a), and Title 1 C.F.R. § CFR 21.52; nor does it contain a citation to any substantive authority, as exemplified in Title 1 C.F.R. § CFR 21.45, and Title 1 C.F.R. § CFR 21.53.

Each of the Treasury Decisions purported to have promulgated "26 CFR 301.7433-1", in every instance, failed to comply with the "responsibilities and procedures" established in TREASURY DIRECTIVE 25-03[7], "for submitting Department of the Treasury documents to the Office of the Federal Register in accordance with Title 1 of the Code of Federal Regulations (CFR) Chapter 1.".

Based upon the standard established by <u>Chrysler v. Brown</u>, *supra*, <u>Morton v. Ruiz</u>, *supra*, each Treasury Decision's failure to comply with TREASURY DIRECTIVE 28-01 and TREASURY DIRECTIVE 25-03, in failing to meet the procedural requirements of the Office of the Federal Register publishing the Code of Federal Regulations[8] in its administration of the Federal Register Act, precludes construing "26 CFR 301.7433-1" as anything more than an "interpretative regulation" not "affecting

---

[7]Failure to comply with Treasury Directive 28-01 is discussed in greater detail below.

[8]("...[T]he codification of the general and permanent rules published in the Federal Register by the executive departments and agencies of the Federal Government". SEE 1 CFR 2.5(b); 1 CFR 8.1).

individual rights and obligations".

There is not, nor could there have been, any "failure" in respect of such "interpretative regulation".

In discussing the distinction between "substantive" and "interpretative (interpretive)" regulations, the <u>Chrysler</u> Court pointed out, at 441 U.S. 315, that the regulation at issue therein established, *inter alia*:

> " 'As the changes made by this document relate solely to interpretive rules, general statements of policy, and to rules of agency procedure and practice, neither notice of proposed rule making nor public participation therein is required by 5 U.S.C. 553. Since the changes made by this document either relieve restrictions or are interpretative rules, no delay in effective date is required by 5 [441 U.S. 315] U.S.C. 553(d). These rules shall therefore be effective immediately.' "

<u>Chrysler</u> found,

> "Thus, the regulations were essentially treated as interpretative rules, and interested parties were not afforded the notice of proposed rulemaking required for substantive rules under 5 U.S.C. § 553(b)."

_____TREASURY DIRECTIVE 28-01 establishes that "[T.D. 8392, 57 FR 3536, Jan. 30, 1992; 57 FR 5931, Feb. 18, 1992, as amended by T.D. 9050, 68 FR 14320, Mar. 25, 2003]", *aka* "26 CFR 301.7433-1" had to meet the procedural requirements of the Administrative Procedure Act, as well as those of Title 1, Code of Federal Regulations; the latter reaffirmed in TREASURY DIRECTIVE 25-03.

TREASURY DIRECTIVE 28-01 applies, by express terms, to:

(1) any advance notice of proposed rulemaking, notice of proposed rulemaking (proposed regulation), temporary (interim) regulation, final regulation or Treasury Decision published in the Federal Register;
(2) any other publicly-issued document of general applicability and future effect <u>designed to implement, interpret, or prescribe law or policy</u>, or describing the procedure or practice requirements of an office or bureau;
(3) any document that withdraws or substantively amends a previously issued

regulation;
(4) <u>any document published in the Notice section of the Federal Register that:
    (a) requires or authorizes any action on the part of any person to participate in a program, avoid a penalty, or obtain a benefit;
    (b) contains a reporting or recordkeeping requirement;</u>

Stoduto forcefully asserts, in so many words, that "26 CFR 301.7433-1" was "<u>designed to implement, interpret, or prescribe law or policy</u>," and "<u>requires...any action on the part of any person...to participate in a program, avoid a penalty, or obtain a benefit</u>" as described in TREASURY DIRECTIVE 28-01. This forceful assertion establishes that the TREASURY DIRECTIVES are applicable to the regulation cited.

Further,

Stoduto' regulation (sic) is its own best evidence of failure to comply with the Administrative Procedure Act, as mandated by TREASURY DIRECTIVE 28-01. The published "26 CFR 301.7433-1", containing only the bracketed reference "[T.D. 8392, 57 FR 3536, Jan. 30, 1992; 57 FR 5931, Feb. 18, 1992, as amended by T.D. 9050, 68 FR 14320, Mar. 25, 2003]", contains the statement, in part, that:

> "It also has been determined that section 553(b) of the Administrative Procedure Act (5 U.S.C. chapter 5) does not apply to these regulations..."[9]

---

[9] Section 4 of the Administrative Procedure Act, at 5 U.S.C. § 553(b), provides for ONLY two exceptions to the requirement that "General notice of proposed rule making shall be published in the Federal Register":

*****

"Except when notice or hearing is required by statute, this subsection does not apply --
"    (A) to *interpretative rules, general statements of policy,* or *rules of agency organization, procedure, or practice*; or
"    (B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest."

\_\_\_\_\_TREASURY DIRECTIVE 28-01, unarguably applicable, allows exemption from 5 U.S.C. § 553 only in cases of emergency or statutory or judicial deadlines, and requires that any regulation asserting such "shall contain a specific statement explaining, and a citation to the provisions of 5 U.S.C. 553 that authorize, such action." TREASURY DIRECTIVE 28-01, Part VI, ¶¶ 1, 2.  "[T.D. 8392, 57 FR 3536, Jan. 30, 1992; 57 FR 5931, Feb. 18, 1992, as amended by T.D. 9050, 68 FR 14320, Mar. 25, 2003]", aka "26 CFR 301.7433-1" failed to comply with these procedural requirements of TREASURY DIRECTIVE 28-01.

\_\_\_\_\_In the similar situation, the Supreme Court wisely followed the precedent it had set 2 years previously:

> "As we observed in Batterton v. Francis, 432 U.S. 416, 425 n. 9, 97 S.Ct. 2399, 2405 n. 9, 53 L.Ed.2d 448 (1977):
>> "[A] court is not required to give effect to an interpretative regulation. Varying degrees of deference are accorded to administrative interpretations, based on such factors as the timing and consistency of the agency's position, and the nature of its expertise." [10]
>
> "We need not decide whether these regulations are properly characterized as "interpretative rules." *It is enough that such regulations are not properly promulgated as substantive rules*, and therefore not the product of procedures which Congress prescribed as necessary prerequisites to giving a regulation the binding effect of law."

Chrysler, at 441 U.S. 315 (Emphasis added).

In the clear absence of an incorporated "finding and a brief statement of reasons therefor" as specified in 5 USC § 553(b)(3)(B), and in the clear absence of "a specific statement explaining, and a citation to the provisions of 5 U.S.C. 553 that authorize,

---

[10] The Court is respectfully reminded that defendant's agency failed to even attempt to promulgate a regulation for four years after the right to bring an action was granted by Congress.

such action" as required by TREASURY DIRECTIVE 28-01, Part VI, ¶¶ 1, 2, the assertion that "section 553(b) of the Administrative Procedure Act...does not apply...", the Treasury Decisions purporting to promulgate "26 CFR 301.7433-1" are their own best evidence that it is merely "an interpretative regulation" Chrysler, 441 U.S. 281 at 315; Batterton v. Francis, 432 U.S. 416, 425 n. 9, not "affecting individual rights and obligations" Morton v. Ruiz, 415 U.S. at 232, that "[A] court is not required to give effect to" Batterton v. Francis, *supra*.

Based upon the foregoing, the Court should follow the Supreme Court's prudent example, and find that "26 CFR 301.7433-1" fails to "affect individual rights and obligations" Morton v. Ruiz, notwithstanding the clear Congressional intent that "administrative remedies [be made] available"; that it is nothing more than an "interpretative regulation", Chrysler v. Brown, 441 U.S. 281 (1979), i.e., a regulation not "affecting individual rights and obligations" Morton v. Ruiz, 415 U.S. at 232; that the "court is not required to give effect to" Batterton v. Francis, 432 U.S. 416, 425 n. 9; and that "26 CFR 301.7433-1" lacks substantive authority.

Plaintiff asserts that the misrepresentation(s) of defense counsel cast doubt upon defendant's credibility insofar as defendant, by and with counsel's assistance, posits that the disclosures admitted were "in connection with" collection, and properly actionable only under section 7433. Plaintiff asserts that ddefendant should be required, at a minimum, to produce all Certificates of Assessment relevant to the periods at issue to establish, as a factual matter, that the disclosures complained of were, in fact, "in connection with" collection of assessed liabilities. Defendant's

production or failure to produce such Certificates of Assessment would provide the factual foundation upon which the Court cold then make a fully informed decision.

In the alternative, Plaintiff asserts that the Court should consolidate Plaintiff's two (2) related cases, counsel's misrepresentative assertions of lack of jurisdiction and failure to state a claim notwithstanding.

**WHEREFORE**, plaintiff requests that defendant's motion to dismiss be denied.

Dated ___Oct. 3___, 2007

_____
Michael Robert Marsoun

copies mailed this __3__ day of October, 2007, to:

Nicole M. Stoduto
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 227
Washington, D.C. 20044